## Holowis, Admx. v.
## Philadelphia Electric Company

*Fred T. Cadmus, 3d,* for plaintiff.
*Richard Reifsnyder,* for defendant.

RILEY, J., February 14, 1966.—Agnes Ethel Holowis has instituted action, as administratrix of her husband's estate, against the Philadelphia Electric Company and C. Richard Levengood for the wrongful death of her husband, averring that on September 17, 1961, her husband was working on the property of Levengood as a business guest in trimming certain trees, and came in contact with frayed high tension wires, causing his death. Suit was instituted in September 1962 by summons, and complaint was filed in September 1963. In February 1965, plaintiff requested inspection of certain reports and documents of defendant company, all but six of which were produced for inspec-

tion. The refusal of the company to permit inspection of the six items has come before us for ruling under rule 4007 of the Pennsylvania Rules of Civil Procedure, defendant claiming right to withhold the information from plaintiff under the limitation to the rights granted in rule 4009, as set forth in rule 4011(d), specifically claiming the documents and reports referred to were made and prepared in anticipation of litigation.

The rule with which we now deal is neither easily defined nor applied. Referring to the Federal rule of limitation, which is broader in scope than that of Pennsylvania, but grounded upon much the same principles, the Supreme Court of the United States, in Hickman v. Taylor, 329 U. S. 495, states the heart of the problem: "It is not without reason that various safeguards have been established to preclude unwarranted excursions into the privacy of a man's work. At the same time, public policy supports reasonable and necessary inquiries. Properly to balance these competing interests is a delicate and difficult task".

The rule of limitation in Pennsylvania is quite specific in its wording; namely, no discovery being permitted as to "existence or location of reports, memoranda, statements, information or other things made or secured by any person or party in anticipation of litigation or in preparation for trial. . . .", but courts vary in interpretation of its application. The mere fact that reports or photographs may at some time be employed in litigation will not be sufficient to invoke the limitation upon right of discovery if the information was gathered in the ordinary routine of business: Philber Lehigh Co. v. Canada Dry Bottling Co. of the Lehigh Valley, 17 D. & C. 2d 356; Hirsch v. City of Philadelphia, 17 D. & C. 2d 461. The problem is one of judgment and interpretation in each case to resolve the question of whether the specific information sought

was obtained with the primary objective of anticipating litigation, or was obtained in normal and routine matters that may include circumstances relating to the incident in question. The question arises most frequently, and is the more difficult to answer, in accidents involving utilities and municipalities, which are by nature and experience more vulnerable to litigation and which are undoubtedly conscious of possible or even probable litigation in all investigatory procedures, so that what may ordinarily appear to be routine procedures nevertheless are designed and have a conscious anticipation of litigation. This is the issue now before us.

Judge Smillie, of the Montgomery court, most recently dealt with this issue in Glisson v. Carlin, 34 D. & C. 2d 433, in which he reviews a substantial number of lower court authorities upon the subject. We coincide in the principle upon which the judgment of each case must rest, namely, a sense of fairness. There is certainly no duty imposed as yet by law upon a person or utility to gather information, at its time and expense, in order to provide the evidence upon which a prospective litigant may enter suit against it or recover damages from it. The basis of the limitation appears most definitely to be the inherent unfairness of compelling a diligent party, who makes investigations in its own defense, at its own expense and time, to turn over that product to a prospective or actual litigant seeking to recover damages from it. There is as yet no duty or obligation imposed by law upon one party to investigate an accident for the benefit of the other.

Subject to peculiar circumstances of a particular case dictating otherwise, the rule, as it appears to us, is that the work product of one party of his or its investigation of an incident resulting in, or likely to result in, litigation is not subject to discovery process. On the other hand, information existing in a normal

course of events, apart from the party's involvement in probable or actual litigation, is information that should be available to all parties. Thus, in the present case, the size and location of supporting towers for the wires, the size of the wire employed, the source and termini of the power flowing through the lines and quantum of electricity and other objective data, if such information was held by defendant, would be subject to discovery proceedings. On the other hand, information, reports and the like specifically procured as a result of its investigation of the specific incident is the product of preparation for litigation against it and is immune. The distinction is drawn in the Glisson case, supra, between routine police reports as made of every accident, whether the municipality were involved or not, and special investigation relating to its own responsibility. The line, indeed, is not always clear or readily definable in specific cases, and the resolution of the problem, therefore, in borderline circumstances must rest upon sound judgment and discretion. The distinction here noted has been referred to by this court without need of application in Venito v. Pennsylvania Railroad Co., 10 Chester 237. If the information sought comes from the investigatory procedure anticipating litigation, it is free from discovery process. If the information arises in normal business routine, independent of the investigatory procedure, then it is subject of discovery.

Turning to the requests now before us, the first appears to be one desiring photographs allegedly taken by defendant of the tree in question after the incident in question occurred. This we deem clearly within the investigatory procedure under the circumstances of this case anticipating litigation, and, therefore, such request is denied under the exclusion of rule 4011(d). The same ruling is applicable to requests for accident reports compiled from the results of the investigation by defendant of this specific incident.

Plaintiff seeks inspection records of the line prior to the accident or subsequent to it. Insofar as the request applies to routine inspection, or even special inspections independent of this incident, before or after the date in question, such reports would be subject to discovery, because, although possibly usable in litigation, they were made, and the information obtained, independent and apart from the specific investigation of this accident. If any such reports of inspection exist, they must be disclosed under the discovery. Excluded, of course, would be any report of inspection made in specific relation to this particular incident. It is not at all clear to us from the record if any inspection reports exist relating to the line made in routine of business.

A third category of inquiry involves the cutting down or trimming of the trees subsequent to the accident. We fail to see how such would be related in any way to information gathered in anticipation of litigation. If this tree were subsequently cut or removed, data and information relating to such, if such information does exist, is subject to discovery process. In this respect, it is gathered that plaintiff believes, with reason, that reports of a tree trimming concern were received by defendant in anticipation of cutting down or trimming the particular tree. Such may be relevant to the issue, and, we believe, must be made available to defendant under discovery process.

We admit to great difficulty in determining the area of information covered in the specific reports referred to in the deposition of C. Thomas Fontana, an official of defendant company, and the purpose each may serve in defendant's business. When the case was first called before this court, decision was delayed so that sufficient information could be provided, by way of deposition, to enable an intelligent ruling. We find the deposition of Mr. Fontana of very little help to this end, other than designating the six specific areas of information in question. Mr. Fontana merely states broadly that

each was obtained as part of the investigation by the company in anticipation of this litigation. The six items consist of a report by F. A. Bartlett Tree Expert Company, dated September 21, 1961, a report of J. H. Austin, electrical superintendent of defendant company, dated February 6, 1962, a plan and profile of the tree dated November 1961, two plans and profiles of the tree, dated January 20, 1962, and plan and pole details dated January 30, 1962. We are not led to conclude that these reports were made in anticipation of litigation merely because Mr. Fontana so states. The material that should have been supplied is the purpose to be served by the reports and plans and the general scope of content from which a realistic finding might be made. We do not mean that the specific contents need be made known, for such, of course, would serve to disclose information that might otherwise be immune from disclosure. However, the general area of content from which it might be gathered that the substance of the plans or reports was designed for the actual or anticipated litigation, or aimed primarily at some other purpose, is the most important feature bearing upon the issue which we must determine. In light of the fact that the tree was in fact removed, according to Mr. Fontana's deposition, we are not satisfied merely from his broad statement that the plans and sketches were made in anticipation of litigation. They may just as well have been prepared for the purpose of determining whether the tree should be removed, or how it should be trimmed in the normal course of business, although possibly occasioned by the accident in question. In the broad areas of distinction previously discussed, if the latter were the objective, discovery would be proper.

We must, therefore, consider the burden of showing that the information sought comes within or without the exception of rule 4011 (d). The Glisson case, supra,

while admitting of the validity of the general rule, expressed in Minichino v. Borough of Quakertown, 88 D. & C. 83, and Williams v. Triangle Publications, Inc., 19 D. & C. 2d 226, that the party objecting to the discovery under exceptions of rule 4011 has the burden of establishing that the subject information falls within the exceptions, speaks of some presumption that information is assembled in anticipation of litigation, which presumption must be rebutted by the petitioning party. Reference is made in the Glisson case to Parry v. City of Wilkes-Barre, 48 Luz. 145, as holding that a presumption exists in favor of anticipation of litigation. We do not coincide in the interpretation of the Parry decision, which we deem to merely find as a fact that the information there in question was obtained in anticipation of litigation, with no reference to burden of proof or presumption. Nor do we find any justification for the existence of a presumption that would distinguish the application of rule 4011(d) from other exclusions of rule 4011. The burden is upon the party claiming immunity of information within the exclusions of rule 4011(d) to convince the court that the information sought was gathered in anticipation of litigation.

Defendant had full opportunity in the depositions taken, or by any other pertinent testimony, to provide sufficient evidence for us to intelligently determine whether the reports referred to were exempt under rule 4011(d). We are not so convinced merely because Mr. Fontana says it was. Under such circumstances, we conclude that it has not been established to our satisfaction that the respective reports above noted, as well as the plans and sketches, were made and gathered in anticipation of litigation and, therefore, must be disclosed to plaintiff. The record is entirely void of any indication as to why the reports were made or what relation they might have to pending or prospective liti-

gation. Such evidence was unquestionably within the control of defendant to produce and to establish the exclusion sought, and might readily have been presented without disclosing the specific details of the contents of the reports. Merely because a report or sketch was made, or was occasioned as a result of an accident, does not indicate that the report or sketch bore upon litigation, real or prospective.

And now, February 14, 1966, plaintiff's motion for inspection of the report of F. A. Bartlett Tree Expert Company, dated September 21, 1961, the report of J. H. Austin, electrical superintendent, dated February 6, 1962, plan and profile sketch of the subject tree, dated November 1961, two plans and profiles of the tree dated January 1962, and plan and pole details dated January 30, 1962, is granted, and defendant, Philadelphia Electric Company, is ordered to make such plans and reports available at a reasonable time and place for inspection by plaintiff or her counsel of record within 30 days of this date.